May it please the Court, my name is Kiwi Kamara. I represent Psystar Corporation. I'm joined at the Council table by my colleague Rebecca Hack. There are three issues in this case. I'm going to start with copyright misuse. As this Court knows, the Ninth Circuit has repeatedly announced that it is copyright misuse to attempt to use a copyright to protect rights other than those granted by the Copyright Act. We believe Apple has done that here by attempting to use its copyright in OS X to protect its right to enforce a contract provision, namely the contract provision that requires that OS X be used only on Apple Macintoshes and not on the open computers that my client manufactured and sold during the period that is the subject of this case. We think that argument is supported most clearly by the Fifth Circuit's decision in Alcatel, which addressed specifically this question, whether a manufacturer of both operating systems and hardware controlled by those operating systems commits copyright misuse by requiring that the operating system be used only on that hardware or by requiring only that hardware manufactured by that same person be used in conjunction with other hardware and with the operating system. So we think Alcatel is squarely on point, and we think this Court ought to follow that well-reasoned decision unless there is something in the lines. Isn't it true, though, that the software is designed to operate the Apple hardware? Yes, Your Honor. And normally you would not think that it was a misuse of anything to design something that's for use in a specific product. We don't believe it's misuse for Apple to design the OS X to work on Macintoshes. And they can't say this is, in licensing the hardware, you're supposed to use software. You have to use this on Apple computers. We don't even think there's anything wrong with that license term, necessarily. They can enforce that license term by suing for breach of contract, which they did. And the only reason we're on appeal on the copyright issue is because they want copyright damages. That's why this matters. Under the Copyright Act, there is substantial statutory damages, up to $150,000 per work. And then the really major damages, which come under the Digital Millennium Copyright Act, which governs circumventing access control mechanisms for the purpose of infringement, and that imposes statutory damages per act of circumvention, which in a software case is per act of using the software. So the reason this is not a case about whether Apple can enforce a license restriction that requires OS X to be used on Apple computers. It can do that by breach of contract. But you did copy the software. Well, we're not challenging that on appeal.  Well, we installed copies of OS X, Your Honor. We're often compared in the briefing here and below to pirates. We're certainly not pirates. What pirates do is buy one copy of someone's software, make a thousand copies without paying for those thousand copies, and then use those to engage in business, either sell them directly or install them. You licensed each one. We bought copies of each one, and again, whether that's a license or a purchase is an issue before the district court, it's irrelevant here because we focused on copyright misuse. Counsel, it's difficult if I didn't ask you a question. If I understand that the copyright misuse defense is not a defense that's been articulated by the U.S. Congress in the Copyright Act, and it's been developed by reference to patent misuse, as in the Alcantara case, is that correct? Congress has not declared this a defense? That's correct, Your Honor. There's no copyright misuse section. I will say the defense is not wholly divorced from the text of the statute because the defense, as it's been elaborated in the Ninth Circuit, is that when you attempt to use copyright to enforce a right not granted by the Copyright Act, that's what copyright misuse is. So to see what rights... Okay, but now if it's basically an equitable defense, wouldn't one have to look at the total circumstances? So for example, could there be a difference between applying the copyright misuse defense if somebody bought the Mac software and they were sampling it at the wherewithal to adapt it so that they could use it on a non-Mac computer? If they bought the operating system, Mac OS system, but then they put it on a PC that wasn't an Apple product, and that consumer got sued for copyright violation. So now, could that consumer assert copyright misuse as an affirmative defense? I would say maybe, but now that we're getting to the case of her client and they do this on a large scale, wouldn't we have to look at that in terms of all the circumstances? I think no, Your Honor, for two reasons. First, this Court in, I believe, Altera, also the Fourth Circuit in Laser Comb, have held that whether copyright misuse exists depends on the acts of the copyright proprietor, so that even if the person asserting the defense of copyright misuse hasn't had the copyright misused against them, they may nonetheless claim the defense. So if it exists, it exists for all defendants, not just for PSYSTAR. But secondly, if we're correct about copyright misuse, then PSYSTAR is not a bad actor. PSYSTAR has done something which is permitted under the copyright law, including the copyright misuse defense. And the reason why what PSYSTAR is doing is good is because it promotes competition in the hardware that can be used to run Mac OS X. Our client is like a small version of Dell or of Gateway. We offer customers more choices about what kinds of hardware they can run OS X on. So I respectfully would suggest that our client should not be regarded as an especially bad actor. If anything, allowing our client to use defense furthers the policies behind the Copyright Act and behind American intellectual property law generally. I'm not suggesting they're a bad actor. I'm more suggesting that I would have thoughtfully looked at the total circumstances, whatever they are. Let me ask you a further question. Somewhere in your argument, could you address this? I thought I could brief you and not just what Apple was doing to time, to a time in their time. But is there evidence that was presented about Apple's market power in the market for the operating system software? And is there evidence that an appreciable amount of commerce would be restrained in the hardware market for computers if such a tie was required? No such evidence was presented, Your Honor. And we have not asserted in this case an antitrust tying claim, which is the kind of claim for which those would be some of the elements. We have asserted that claim in the Florida case, and that leads into the issue of the scope of the injunction in this case. But to focus on the Court's question, this Court has been clear that an antitrust, successful antitrust claim is not a prerequisite to the defense of copyright misuse. Apple argues that by analogy to the patent misuse statute passed by Congress, there should be a requirement of a finding of market power for a copyright misuse defense that is based on tying. But if anything, the fact that Congress enacted a statute in the patent context and did not enact any similar statute in the copyright context suggests that the decisions of the courts were allowed to stand by Congress and that no such defense should be created by this Court. In any event, even Apple agrees that there is no precedent that would support that argument. Yes, Your Honor. It is a non-circumstance when you're talking about restraint of competition, and we're not talking about antitrust. It seems to me, in a sense, that you are really trying to get around the antitrust prerequisites to a tie-in claim successfully in the copyright context. Isn't that what we're doing here? Is it we're promoting and we're allowing a tie-in claim without the prerequisites that we would normally require? No, Your Honor. As I said earlier, Apple can still enforce its contractual license term, so we're not saying that you're going to be declaring Systar's conduct absolutely legal. We're simply saying that the correct cause of action, and most importantly to my client, the correct set of remedies is the remedies provided by contract law, not the remedies provided by copyright law. So what we're doing is properly cabining those extremely large remedies that Congress provided to protect a certain set of rights, the rights to copy, distribute and create derivative. I'm not sure I understand, just speaking for myself. It's a little cold in here and I'm having trouble talking now, too. What your client is doing, as I understand it and I may not, is that you are licensing a copy of the software from Apple and then you're installing it on an Apple computer and then copying it onto one of yours. And, yes, is that essentially? I mean, this is oversimplified, but. Yes, Your Honor, but I would point out. So what you've just described, Your Honor, is the imaging station process, and that is a process used simply to speed the manufacturing process. Right. We could do exactly what we're doing by opening every box and taking out the CD and putting it in a Systar computer. So what we're doing at a more functional level is installing some software written by Systar that makes OS X compatible with a whole wider range of other hardware. And to return to Judge Thomas's question, if we succeeded in showing an antitrust violation based on tying, then those contracts would fail, too, and Systar would be entitled to large damages, and that is the issue that we're litigating in Florida. So we do think they're illegal, but we don't think that means that we had to muster all of our antitrust evidence in this case where we're the defendant and we only seek to prove our defense of copyright misuse. All right. Am I also correct that the only case that has recognized a kind of copyright misuse is in this circuit, has to do with the coding system that was sold to the I forget the name of the case. The case is Practice Management, Your Honor. Practice Management. I can't think of another Ninth Circuit case that sustained the defense. There are district court cases, but in any event, Practice Management. But as far as you know, that's the only case in our circuit that has sustained it. Yes. Yes, Your Honor. And our argument with respect to Practice Management is this. Practice Management said it was misused to make your copyrighted work exclusive by means of a licensing term. Now, again, copyright misuse is about protecting those rights granted by the Copyright Act. There, the restriction, use my work only, at least bore some relationship to a copyrighted work. Here, the restriction is not use my copyrighted work only. It's use my other product only in connection with that copyrighted work. And we think that kind of restriction, if anything, is more divorced from the rights that were granted by the Copyright Act than the restriction that was issued at issue in Practice Management. In any event, I see that argument is not gaining traction. The language in the Practice Management case is the same language that's been used in all the circuits, including in the Alcatel decision, and that language is we look to whether or not the copyright owner is protecting a right granted by the Copyright Act. The right to control how your copyrighted work is used is not a right granted by the Copyright Act. That's the thing that unites Practice Management, Alcatel, and all the other cases. And if we look at the cases that Apple relies on, these are the service software cases where a company like Xerox will sell copiers and also some software used to diagnose problems. Those cases are not the same, because in those cases, the objection is that Xerox refuses to license its software at all to third-party providers of those services. And, of course, the right to control a vending is a right granted by the Copyright Act. It's the right to control copying and distribution. It would be a quite different case if they sold copies of their software and attempted to control how those copies were used. It would be as though you sold a book and said that the ideas in the book could only be used for certain purposes, for example, for the benefit of IBM or for the purpose of the company. But the software is designed to operate the Apple computer. Yes, Your Honor. And, again, Apple is not required to help us. They're not required to design their software so that we can make it run on other  But that's the case. And purchases aren't required to use only Apple computers. They can buy any computer they want. Yes, Your Honor. But I think it's one – I think there are two quite different things to say that Apple is not required to design it so that it will work on other computers, and to say that we are forbidden from innovating in such a way that it will work with other computers. The first is certainly true, but the second is not illegal because of it. I thank the Court for its time. May it please the Court. I'm George Riley for Apple. This case is clearly controlled by the Ninth Circuit's decision in Triad. In Triad, the Ninth Circuit reaffirmed the bedrock principle of copyright law, namely that a copyright holder can control the conditions of reproduction, modification, and dissemination of the copyrighted work. I suppose that's reading a lot into Judge Smead's paragraph, it seems to me. That case, which arose from Judge Smith's district court opinion, contains, if you read the entire case, a very thoughtful evaluation. And I think the reason it was only given a paragraph is because it is so well established in this industry. I suppose it is reading a lot into it, it seems to me. But it is well established in this industry that one can restrict the use of software to a particular piece of hardware. In fact, the record in this case shows that software developers from Nintendo to Microsoft to BlackBerry all restrict the use of that software to that particular device. If Systar's arguments were accepted, individuals would be free to take the printer driver, which is licensed with the printer, modify that driver, and go into business in competition with Hewlett-Packard. And that is clearly not presented, clearly not permitted by the misuse doctrine. Now, I think it's important to clarify exactly what happened in this case, because Judge Alsa characterized the defendant in this case as a hardcore infringer. And, in fact, that's what they did. They purchased a copy under license of the Mac OS. They accepted the terms of that license. They could have returned the copy, but they didn't like those terms. But they accepted the terms of that license. They installed it on a Mac computer. And then they made an illicit copy from that Mac computer onto an imaging station. And then, with regard to that imaging station copy, they turned it into their master pirate copy by rewriting parts of the software, by disabling parts of the software, by adding new software. They created a derivative work. Then they took that derivative work and they copied it onto hundreds of computers. Well, even the pretext of a right to do that. No license governed that. Then, in a last-minute attempt to try to offer some justification for what they did, they added a boxed copy of Mac OS X from Apple with every Systar computer that they shipped. But the fact that there was a boxed copy, which wouldn't run on their computer because it hadn't been modified, that didn't transform the illicit, unauthorized copy to make it a proper copy. They had two copies, the one on the computer, which was illegal, and the separate copy in the box, which they acquired from a commercial vendor. So why is this case, I believe, so squarely controlled by Triad? In Triad, this Court upheld a more onerous restriction than is apparent here. In Systar, the defendant was arguing that it should be able to at least service Triad computers by turning them on. By turning them on, you make a copy of the software. And this Court said, no, it is within the right of the copyright holder to control the conditions of the reproduction of that copyrighted work. And in that case, the license said third parties cannot operate the software. We don't say that. Apple doesn't say that. You can take your Mac into a diagnostic unit. You can have people work on your Mac. But what you can't do is what Systar did, which was to take that software, modify it, and copy it on to other hardware. That's clearly a form of copyright violation. First, does Apple agree that the defense of copyright misuse should be applied in the Ninth Circuit? We believe that doctrine has been recognized in the Ninth Circuit, yes, Your Honor. And second, in a case such as this, what should be the standard, assuming that the market for hardware is different than the market for software? What standard are we supposed to use in determining whether Apple is misusing its copyright? There are two standards, Your Honor. The first is, does the license agreement on its face restrict creativity? For example, in practice management, the case that Judge Schroeder raised, in that case, the license provided that the licensee couldn't independently develop software. That clearly was a restraint on creative activity by the licensee. And this Court struck down that restriction. That's not here. No one is contending that Apple restricts creativity by people who license the macOS. If it's not a restriction on creativity, then you need to have evidence that it is a restriction on competition. And we believe that evidence of restrictions on competition, you have to show that there is market power. In other words, that by requiring users to use the macOS only on Apple hardware, that And, of course, there could be no evidence of that because Apple has a small fraction of the operating system market, less than 10 percent. So there was no showing of market power here. In Alcatel, the Fifth Circuit case, the holding of which has never been adopted in the circuit, there was evidence of an actual inhibition on competition in a market for expansion cards. In that case, which went to trial, there was a jury verdict. The jury was instructed about copyright misuse. And on review, the jury verdict was overturned by the district court. And then the court of appeal had to review, is there evidence here to support a jury verdict of copyright misuse? And what they found in that case was the defendant, who had already been in the business of doing expansion cards, there had been a change in the technology, and there was a finding by the court that they could not compete in these expansion cards unless they had access to the operating system of the telephone switching equipment in order to test those cards. There is nothing in the Fifth Circuit decision that would intimate that the defendant in that case could not simply test their hardware cards, sell them separately, but copy the entire telephone switching operating system and go into competition against Alcatel. That was not permitted in the Alcatel decision. It's a limited decision that rests solely on the competition in the hardware, in the separate aftermarket for hardware cards. That's not what this case is about. This case, the one before you today, is squarely about the copyright holder's right to establish the conditions for the reproduction of the copyrighted work. And much like a playwright could say the conditions for the reproduction of my play is that you perform it as a play, well, then you can't say, well, I bought a copy of the script. Now I can make a musical out of it. I can make a television comedy out of it. No. You're restricted by those use restrictions imposed by the copyright holder. Napster is a good example of a discussion of copyright misuse in the Ninth Circuit. In that case, the defendant, Napster, claimed that it was copyright misuse for the record companies to say our copyright extends to digital delivery of copyrighted songs. And this Court had no problem in saying no. The copyright clearly extends to restrictions on digital distribution. That right was not granted to Napster. Here, the right to reproduce, modify, and commercially sell the Mac OS was not a right that was granted to Systar. And in Wall, that's a good example of how when you exceed the limits of your copyright license, you commit copyright infringement. It's not simply a contract violation, which appears to be Systar's argument here today. They don't contest that they breached the contract, but they're saying when we breached it, it's not copyright infringement. But the Wall decision, I think, is very instructive on that point. There, the Sheriff's Department licensed 3,600 copies of a software package. And they would have to install it separately on 3,600 computers. They decided in the interest of efficiency, like manufacturing efficiency, that they would image it on 6,000 computers, but they would inhibit the use so that no more than 3,600 users were using the software at any time. At any time, yes. And this Court, and I believe Judge Schroeder was on the panel, this Court said no. The license said you're limited to 3,600. And the fact that you've disabled the use for another 3,000 is of no moment. You made 3,000 additional copies that you were not authorized to make. You are liable for copyright infringement. And that's exactly what Systar did here. They exceeded the bounds, the reasonable bounds, which are virtually universal in these kinds of software packages. You exceeded those reasonable bounds. You made illicit copies. You're liable for copyright infringement. And that's the end of the argument. It really need go no further than that. Any questions about what I have covered? No questions, Your Honor. Okay. Thank you very much. We'll give you 30. Thank you, Your Honor. A couple of quick points. First, Alcatel, that's the main decision we rely on. Alcatel did involve copying of the entire operating system. At page 791, the Court notes, quote, So Alcatel is on point. With respect to the Court's decision in Waldata, again, the test, Judge Gould, is whether you are protecting a right granted by the Act. That license restriction is directed at the right of copying and distribution. This license restriction is not. It's directed at use. That's the test, and that's why all those cases are different. I thank the Court for its time. Thank you. The case just argued is submitted for decision. The Court appreciates the arguments of counsel, and this Court stands adjourned.
judges: Schroeder, Thomas, Gould